IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| L3HARRIS MARITIME SERVICES, INC. f/k/a L-3 UNIDYNE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BAE SYSTEMS NORFOLK SHIP REPAIR, INC. a Virginia corporation,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff L3Harris Maritime Services, Inc. f/k/a L-3 Unidyne, Inc. ("L3Harris"), by and through its undersigned counsel, for its Complaint against Defendant, BAE Systems Norfolk Ship Repair, Inc. ("BAE"), states as follows:

## I.  PRELIMINARY STATEMENT

1. This dispute arises out of a firm, fixed-price subcontract entered into by L3Harris and BAE (collectively the "Parties") to provide various ship repair services to the USS Vicksburg (the "Vicksburg Subcontract") in support of BAE's prime contract with the U.S. Navy.

2. Throughout the course of L3Harris' performance of the Vicksburg Subcontract, BAE significantly increased L3Harris' costs of performance by changing L3Harris' requirements, delaying L3Harris' performance, and requiring L3Harris to perform work beyond the Vicksburg Subcontract's scope of work.

3. The Vicksburg Subcontract provides that L3Harris will be compensated for its increased costs resulting from BAE caused changes.

1

4. L3Harris properly submitted to BAE three requests for equitable adjustment of the Vicksburg Subcontract's price in accordance with the procedures required under that agreement.

5. Notwithstanding the fact that BAE has previously agreed to pay substantially identical requests for compensation for increased costs associated with change orders and constructive changes, BAE refused to grant L3Harris' current requests for an equitable adjustment without legal justification.

## II.   PARTIES

6. L3Harris Maritime Services, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1025 W. NASA Boulevard, Melbourne, FL 32919.

7. BAE Systems Norfolk Ship Repair, Inc. is a corporation organized and existing under the laws of the State of Virginia with its principal place of business at 750 W. Berkley Ave, Norfolk, Virginia 23523.

## III.   JURISDICTION AND VENUE

8. Diversity jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because L3Harris and BAE are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest, fees, and costs.

9. BAE is subject to the personal jurisdiction of this Court because: (1) it is "at home" in Virginia because it is incorporated in Virginia and maintains its principal place of business in Virginia and is therefore subject to this Court's general jurisdiction; and (2) it consented to this Court's jurisdiction by entering into the Vicksburg Subcontract, which contains a forum-selection clause under which both Parties consented to the jurisdiction of this Court.

10. Venue is proper in the U.S. District Court for the Eastern District of Virginia ("Court") pursuant to 28 U.S.C. § 1391(b) because BAE resides in and is subject to personal

jurisdiction in the Eastern District of Virginia. Furthermore, the Vicksburg Subcontract contains a forum-selection clause in which both Parties consented to the jurisdiction and venue of this Court.

IV. **FACTUAL ALLEGATIONS**

    A. **Request for Quotation ("RFQ")**

11. On November 20, 2017, BAE provided L3Harris with a Request for Quotation, "USS Vicksburg (CG 69) Solicitation No. N50054-18-R-6004 (the "RFQ") for certain ship repair services to the USS Vicksburg in support of BAE's prime contract with the U.S. Navy.

12. On December 13, 2017, L3Harris submitted its Quotation for Services in response to the RFQ.

13. In accordance with the RFQ's instructions, L3Harris' Quotation for Services took exceptions to the RFQ's proposed work scope for certain shipyard tasks in BAE's requested format. These exceptions constitute work that L3Harris excluded from its quotation and, as a result, were BAE's exclusive responsibility, including, *inter alia*, interference removal and/or reinstallation, access cuts, structural repairs, welding, and passive countermeasure ("PCMS") tile removal and installation.

    B. **Subcontract Award**

14. On March 27, 2018, BAE accepted L3Harris' Quotation for Services and awarded L3Harris the Vicksburg Subcontract.

15. The Vicksburg Subcontract is a firm, fixed price contract under which L3Harris is required to perform the scope of work in exchange for $1,896,652.00.

16. The Vicksburg Subcontract incorporates three terms and conditions documents: (1) USGOVFFP 2017 ("General Terms and Conditions"); USGOVA 2017 ("Subcontractor Flow-Downs;" and (3) SRAddendum 2017 ("Ship Repair Addendum").

17. Under paragraph 24 of the General Terms and Conditions and paragraph 209 of the Ship Repair Addendum, L3Harris was required to notify BAE, in writing, when L3Harris became aware of any difficulty in performing the Vicksburg Subcontract's scope of work.

18. Through the Subcontractor Flow-Downs, the Vicksburg Subcontract incorporates the provision at Federal Acquisition Regulation ("FAR") Section 52.243-l(b), the Changes Clause, which allows BAE to make specified changes to the Vicksburg Subcontract provided that "[i]f any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the [change] order, the Contracting Officer shall make an equitable adjustment…."

19. Under paragraph 17(a) of the General Terms and Conditions, the following provisions in the Vicksburg Subcontract shall be construed and interpreted according to the U.S. federal common law of government contracts as enunciated and applied by U.S. federal judicial bodies, boards of contract appeals, and quasi-judicial agencies of the U.S. federal Government: any provision that is (i) incorporated in full text or by reference from the Federal Acquisition Regulations (FAR); and/or (ii) incorporated in full text or by reference from any agency regulation that implements or supplements the FAR; and/or (iii) that is substantially based on any such agency regulation or FAR provision.

20. The Vicksburg Subcontract accepted the statement of work reflected in L3Harris' December 13, 2017 Quotation for Services, including the exceptions to BAE's RFQ stated in paragraph 13 above.

### C. Subcontract Performance

21. The Vicksburg Subcontract, as awarded, required a Period of Performance ("PoP") of April 2, 2018 until September 28, 2018, therefore contemplating a PoP of less than seven (7) months.

22. The Vicksburg Subcontract's PoP was formally extended several times over the course of performance through December 4, 2019.

23. Although the Vicksburg Subcontract's PoP has not been formally extended beyond December 4, 2019, L3Harris' work has been increased and delayed as a result of BAE's constructive changes. L3Harris continues to perform the Vicksburg Subcontract and experience cost impacts as a result of BAE's constructive changes.

### D. COVID-19 Impacts on Performance

24. Beginning March 12, 2020, L3Harris' performance of the Vicksburg Subcontract was impacted by the COVID-19 pandemic.

25. The Vicksburg Subcontract incorporates FAR 52.249-14 – Excusable Delays and modifies this clause to apply between BAE and L3Harris.

26. Under FAR 52.249-14 – Excusable Delay, L3Harris' performance of the Vicksburg Subcontract was excused as a result of the COVID-19 pandemic.

27. BAE, however, directed L3Harris to continue performing the Vicksburg Subcontract during the COVID-19 pandemic.

28. As a result of this direction, L3Harris incurred additional costs resulting from COVID-19 testing, increased sick leave, protective measures, increased cleaning processes, and inefficiencies caused by social distancing.

29. BAE's direction for L3Harris to continue performance during the COVID-19 pandemic increased L3Harris' costs by $863,315.45 for the period between March 12, 2020 and July 30, 2021.

### E.     BAE's Constructive Changes to L3Harris' Performance

30.    Between December 2019 and August 2022, BAE engaged in various acts and omissions that delayed or otherwise interfered with L3Harris' performance of the Vicksburg Subcontract.

31.    In accordance with the notification requirements under paragraph 24 of the General Terms and Conditions and paragraph 209 of the Ship Repair Addendum, L3Harris consistently documented these delays and interferences through the industry standard Conditions Found Report ("CFR") process, a shipyard industry standard method to document and seek compensation for events that occur beyond a contractor's control throughout the PoP.

32.    BAE and L3Harris have utilized the CFR process in the course of the Vicksburg Subcontract as well as several other contracts and BAE has not objected to the use of this process; rather, BAE has compensated L3Harris for previous delays and interferences using this CFR process.

33.    For the subject delays and interferences, L3Harris has submitted 229 CFRs to BAE, including 228 CFRs submitted before July 22, 2022 (the "228 CFRs") and 1 CFR submitted on May 25, 2023.

34.    BAE's responses to the 228 CFRs have been untimely, unresponsive to the issues at hand, or both.

35.    The 228 CFRs can be divided into seven categories of changes: (1) L3Harris' provision of out-of-scope structural support services to facilitate BAE's welding, grinding and drilling; (2) BAE-caused delays and disruptions resulting from BAE's failure to complete the structural support services that BAE is required to perform under the Vicksburg Subcontract; (3) rework caused by BAE or BAE's third-party subcontractors; (4) other delays caused by BAE or BAE's third-party subcontractors; (5) delays in receipt of materials BAE was required to provide

to L3Harris, production delays, and delays in closing out work; (6) additional personnel costs resulting from delays; and (7) management and administrative costs resulting from extended performance.

### 1. Constructive Contract Change 1: Performance of Out-of-Scope Structural Support Services:

36. The first category of changes constitutes work that BAE directed L3Harris perform that was outside the scope of the Vicksburg Subcontract because it consisted of structural support work, including but not limited to welding and grinding efforts that BAE was exclusively responsible for under the express terms of the Vicksburg Subcontract.

37. L3Harris timely documented the occurrence of this change through the submission of CFRs, thereby providing adequate notice to BAE. The following CFRs were submitted to document this change: 171C, 172C, 173C, 174C, 175C, 188C, 190C, 191C, 192C, 193C, 194C, 196C, 197C, 198C, 199C, 200C, 201C, 202C, 203C, 205C, 208C, 210C, 212C, 213C, 214C, 215C, 216C, 218C, 224C, 229C, 237C, 238C, 239C, 240C, 241C, 242C, 243C, 244C, 245C, 246C, 247C, 248C, 249C, 252C, 260C, 261C, 262C, 263C, 264C, 274C, 278C, 279C, 280C, 281C, 282C, 283C, 284C, 285C, 286C, 287C, 308C, 312C, 313C, 314C, 315C, 316C, 317C, 318C, 319C, 320C, 321C, 322C, 323C, 324C, 345C, 346C, 347C, 348C, 349C, 350C, 351C, 352C, 353C, 354C, 355C, 356C, and 357C.

38. This additional work beyond the scope of the Vicksburg Subcontract constitutes a compensable change.

39. L3Harris incurred damages as a result of this change as detailed below:

| Hours: 10,514.5 | Growth Rate: $96.04 | Value: $1,009,813 |

40. Notwithstanding BAE's knowledge of this additional work and L3Harris' request for compensation, BAE's authorized procurement representative directed L3Harris to continue

working in an October 13, 2020 letter to L3Harris, stating that "time is of the essence" and that L3Harris was required to continue providing the necessary personnel and support to recover schedule.

41. The schedule delays resulted from BAE directed changes, BAE caused delay, or excusable delay and were not caused by L3Harris.

42. BAE previously recognized the fact that this first category of changes constitutes out-of-scope work because it compensated L3Harris for identical structural support work L3Harris previously performed through Change Order 36, demonstrating that this structural support work is plainly outside the scope of the Vicksburg Subcontract.

43. BAE has also previously recognized the fact that this first category of changes constitutes out-of-scope work because BAE stated in its May 22, 2020 correspondence to L3Harris that it intended to provide L3Harris with an official RFQ to quote structural support services in support of the Vicksburg Subcontract, further demonstrating that this work is plainly out-of-scope.

### 2. Constructive Contract Change 2: Delays Caused by BAE's Failure to Perform Structural Support Services

44. The second category of changes constitutes delays that L3Harris experienced as a direct and proximate result of BAE's failure to perform the shipyard work that it was exclusively responsible for under the Vicksburg Subcontract.

45. Because BAE awarded the Vicksburg Subcontract with explicit work excepted from L3Harris' scope of work including shipyard structural support services and welding, grinding, and drilling, BAE was required to perform these structural support services.

46. A significant portion of L3Harris' work, including L3Harris' obligation to complete cable and electrical item installation, could only be performed after BAE completed these structural support services.

47. BAE repeatedly failed to perform these structural support services, and as a result, caused L3Harris to delay its own performance of the cable and electrical item installation.

48. Where BAE did begin performance of certain structural support services that it was obligated to perform, BAE failed to make adequate progress and encountered significant delays, which caused L3Harris to incur costs due to delays and inefficiencies associated with starting and stopping the same work several times to work around the lack of progress of the necessary structural support services.

49. Due to BAE's failure to perform structural support work and BAE's delays in performing structural support work, L3Harris incurred additional costs associated with delays and rework.

50. For example, BAE's failure to perform necessary and required structural penetrations, welding, grinding and drilling forced L3Harris to only partially install certain cables and caused significant delays to L3Harris' work.

51. L3Harris' increased costs resulted from BAE caused delay are compensable under the Vicksburg Subcontract's Changes Clause.

52. L3Harris timely documented the occurrence of this change through the submission of CFRs, thereby providing adequate notice to BAE. The following CFRs were submitted to document this change: 176C, 177C, 178C, 179C, 180C, 181C, 182C, 183C, 184C, and 185C.

53. L3Harris incurred damages as a result of this change as detailed below:

| Hours: 7,786 | Growth Rate: $96.04 | Value: **$747,767** |

54. BAE has previously recognized the fact that additional work and expense associated with these kinds of delays and interferences are compensable changes for which

L3Harris is entitled to compensation because BAE has compensated L3Harris identical delays and interferences through Change Order 36.

### 3. Constructive Contract Change 3: Rework Required to be Performed by L3Harris due to BAE or BAE's Third-Party Subcontractor's Acts

55. The third category of changes constitutes additional work performed and costs incurred by L3Harris in performing rework required due to events caused by BAE either directly or through BAE's third-party subcontractors.

56. Since December 4, 2019, there were four (4) significant acts of BAE and/or BAE's third-party subcontractors that caused L3Harris to conduct rework on previously installed items through no fault of L3Harris.

57. These four rework changes include: (1) a third-party subcontractor improperly lifted the Data Acquisition Unit (DAU) with already-installed cables connected to it, which required L3Harris to re-pack the Multi-Cable Transits (MCTs); (2) BAE or BAE's third-party subcontractor improperly severed AFT steering cables that L3Harris had already installed, requiring L3Harris to rip out and re-install AFT steering cables; (3) BAE's third-party subcontractor improperly installed electric boxes over two connection boxes that L3Harris already installed, requiring L3Harris to reinstall the two connection boxes; and (4) BAE or BAE's third-party subcontractor, in the course of performing onboard production activities, damaged hydra and fiber cables that L3Harris had already installed, requiring L3Harris to reinstall over 6500 feet of hydra and fiber cables onboard the vessel.

58. This rework was due to no fault of L3Harris and L3Harris' original work on these items was completed in conformance with the requirements of the Vicksburg Subcontract.

59. BAE either directly or constructively required L3Harris to perform the rework as a result of BAE and BAE's third-party subcontractors' acts or omissions.

60. L3Harris notified BAE of these changes through the CFR process in the following CFRs: 333(C), 339(C), 343(C), and 359(C).

61. No term or condition of the Vicksburg Subcontract requires L3Harris to perform rework at its own expense unless a non-conformity is discovered under Paragraph 29 of the General Terms and Conditions.

62. Because L3Harris' original work was completed in conformance with the Vicksburg Subcontract, the rework constitutes a compensable change.

63. L3Harris incurred damages as a result of this change as detailed below:

| Hours: 5,605 | | Growth Rate: $96.04     Value: $538,304 |
|---|---|---|
| CFR | Hours | Rationale |
| 333C | 24 | Man hours associated with 2 L3Harris personnel repacking MCTs over a full 8-hour workday and one-half of a 8-hour workday due to BAE or a BAE responsible subcontractor lifting the DAU with cables attached. |
| 339C | 16 | 2 personnel requiring a full 8-hour workday, for 16 hours total, to reinstall two (2) connection boxes. This reinstall was required due to BAE or a BAE responsible subcontractor installing electrical boxes over the previously installed connection boxes. |
| 343C | 4,704 | Total manhours incurred to reinstall 6,500 feet of previously installed hydra and electrical cable. This reinstall was required due to the cables being damaged by BAE or BAE responsible subcontractors during production. The amount of personnel required varied, but personnel accomplishing rework were reassigned from other tasking onboard the vessel. |
| 359C | 862 | 862 total manhours incurred to reinstall AFT steering cables that required reinstallation due to BAE or a BAE responsible subcontractor severing the previously installed cables. The amount of personnel required varied, but personnel accomplishing rework were reassigned from other tasking onboard the vessel. |

### 4. Constructive Contract Change 4: Delays Caused by BAE and BAE's Third-Party Subcontractors

64. The fourth category of changes constitutes L3Harris' additional work and additional incurred costs associated with other delays caused by BAE and BAE's third-party subcontractors.

65. Since December 4, 2019, there were six (6) significant acts or omissions of BAE and/or BAE's third-party subcontractors that caused L3Harris to encounter delays and incur costs associated with those delays. These six delays involve the following events: (1) BAE undocked the vessel, which caused L3Harris to encounter delays because of the lack of welding support received, resulting in L3Harris' personnel remaining on-site on standby during the undocking period (documented in CFR 330C); (2) BAE lost power on the job site, preventing L3Harris personnel from entering the job site thereby causing delays (documented in CFR 334C); (3) BAE's toxic fume alarm required temporary evacuation of L3Harris' on-site personnel thereby causing delays (documented in CFR 335C); (4) BAE failed to complete DAU 8A staging, which was required in order for L3Harris to perform its work, thereby causing delays (documented in CFR 340C); (5) BAE failed to make the job-site available where the Machine Control System – Integrated Bridge System ("MCS-IBS") room was locked, preventing L3Harris personnel from making a required cable connection and thereby causing delays (documented in CFR 358C); and (6) BAE failed to make the job-site available where L3Harris personnel were required to temporarily evacuate due to a fire on board the vessel, thereby causing delays.

66. These delays constitute a compensable change.

67. L3Harris incurred damages as a result of these changes as detailed below:

| Hours: 1,255.25 | | Growth Rate: $96.04    Value: $120,555 |
|---|---|---|
| CFR | Hours | Rationale |
| 330C | 960 | 960 hours of delay due to L3Harris receiving no welding support during a BAE undocking of the vessel. The lack of welding support by BAE prevented 12 L3Harris personnel from performing its obligations during the undocking period for 2 weeks. |
| 335C | 24 | 23 L3Harris personnel were evacuated for ~1 hour due to a toxic fume alarm on the vessel. |
| 334C | 184 | A BAE loss of power prevented 23 L3Harris personnel on-board the vessel from performing their duties for a full 8-hour workday. |
| 340C | 16 | Required DAU 8A staging not being completed by the LMA affected 2 employees for a full 8-hour workday. |
| 358C | 24 | A locked MCS-IBS room not allowing L3Harris access to make a required cable connection and affected 2 employees for a full 8-hour workday and half of an 8-hour workday. |
| 362C | 47.25 | An evacuation of the vessel associated with a fire required the temporary evacuation of twenty (20) L3H personnel for 1 hour and 35 minutes. |

### 5. Constructive Contract Change 5: Delays in Delivery of Materials BAE Was Required to Provide to L3Harris and Other Production Delays

68. The fifth category of changes results from BAE's delay in delivering materials to L3Harris, failure to timely complete area closeouts, and other production delays.

69. BAE's delays caused a corresponding delay to L3Harris and caused L3Harris to incur additional costs to locate materials, complete closeouts, and to mitigate delays.

70. L3Harris' increased costs resulted from BAE caused delay are compensable under the Vicksburg Subcontract's Changes Clause.

71. L3Harris timely documented the occurrence of this change through the submission of CFRs, thereby providing adequate notice to BAE. The following CFRs were submitted to document this change: 014C, 025C, 069C, 082C, 083C, 086C, 112C REV A, 113C, 122C, 123C,

124C, 136C, 137C, 138C, 141C, 142C, 157C, 158C, 159C, 195C, 217C, 223C, 231C, 232C, 234C, 235C, 236C, 254C, 255C, 258C, 266C, 267C, 268C, 271C, 272C, 275C, 276C, 291C, 292C, 293C, 299C, 301C, 302C, 309C, 311C, 336C, 376C, 344C, 368C, and 376C.

72.  L3Harris incurred damages as a result of this change as detailed below:

| Hours: 2,254 | Growth Rate: $96.04 | Value: $216,474.16 |
|---|---|---|

### 6. Constructive Contract Change 6: Additional Personnel Costs Resulting for BAE Delays

73.  The sixth category of changes results from L3Harris requiring additional personnel costs to as a result of BAE-caused delays in the Vicksburg Subcontract's PoP.

74.  L3Harris' increased costs resulted from BAE caused delay are compensable under the Vicksburg Subcontract's Changes Clause.

75.  L3Harris timely documented the occurrence of this change through the submission of CFRs, thereby providing adequate notice to BAE. The following CFRs were submitted to document this change: 015C, 016C, 017C, 018C, 019C, 020C, 021C, 022C, 023C, 095C, 105C, 107C, 110C, 114C, 131C, and 132C.

76.  L3Harris incurred damages as a result of this change as detailed below:

| Hours: 4,266 | Growth Rate: $96.04 | Value: $409,706.64 |
|---|---|---|

### 7. Contract Change 7: Management and Administrative Extension Costs

77.  The seventh category of changes results from L3Harris requiring additional management and administrative effort as a result of BAE-caused delays in the Vicksburg Subcontract's PoP.

78.  The Vicksburg Subcontract's PoP has been extended from the seven months initially anticipated to over five years.

79. This extension was caused by BAE delays.

80. L3Harris incurred additional management and administrative costs required to oversee performance as a result of the Vicksburg Subcontract's PoP being extended.

81. L3Harris' increased costs resulted from BAE caused delay are compensable under the Vicksburg Subcontract's Changes Clause.

82. L3Harris timely documented the occurrence of this change through the submission of CFRs, thereby providing adequate notice to BAE. The following CFRs were submitted to document this change: 109C, 144C, 160C, 161C, 162C, 163C, 164C, 165C, 166C, 167C, 168C, 169C, 170C, 305C, 306C, 307C, 326C, 328C, 329C, 339C, 340C, and 325C.

83. L3Harris incurred damages as a result of this change as detailed below:

| Hours: 16,290 | Growth Rate: $96.04 | Value: $1,564,491.60 |
|---|---|---|

### F. L3Harris' Requests for Equitable Adjustments:

84. BAE failed to adequately respond to these 228 CFRs and refused to compensate L3Harris for any of these pending CFRs.

85. On July 22, 2022, L3Harris submitted a Request for Equitable Adjustment ("REA") under the Vicksburg Subcontract's Changes Clause, FAR § 52.243-1, seeking $863,315.45 in additional compensation for its increased costs resulting from its performance during the COVID-19 pandemic discussed in paragraphs 24 to 29 above.

86. BAE improperly failed to pay L3Harris for the additional compensation requested in the July 22, 2022 REA.

87. On August 22, 2022, L3Harris submitted an REA under the Vicksburg Subcontract's Changes Clause, FAR § 52.243-1, seeking $2,416,439 in additional compensation

for the additional work, delays, and rework discussed in paragraphs 36 to 67 above in Constructive Contract Changes 1-4.

88. BAE improperly denied L3Harris' August 22, 2022 REA on January 31, 2023.

89. On November 9, 2022, L3Harris submitted an REA under the Vicksburg Subcontract's Changes Clause, FAR § 52.243-1, seeking $2,190,672.40 in additional compensation for the additional work and delays discussed in paragraphs 68 to 83 above in Constructive Contract Changes 5-7

90. BAE improperly failed to pay L3Harris for the additional compensation requested in the November 9, 2022 REA.

91. On May 25, 2023, L3Harris submitted CFR No. 417C (the "May 25, 2023 CFR"), documenting additional expenses incurred from November 2022 through April 2023 in support of the ongoing efforts to close out Contract work items.

92. Like Constructive Change 7, discussed in paragraphs 77-88 above, the constructive change detailed in the May 25, 2023 CFR resulted from L3Harris requiring additional close out efforts, above and beyond the Contract requirements, as a result of BAE-caused delays in the Vicksburg Subcontract's PoP.

93. The additional costs for this additional close out work total $194,005.13.

94. The additional close out work is a compensable change.

95. BAE improperly failed to pay L3Harris for the additional costs requested in the May 25, 2023 CFR.

## COUNT I:  BREACH OF CONTRACT

96. L3Harris alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

97. The Vicksburg Subcontract, as awarded, did not require L3Harris to perform Shipyard structural support work or rework, and did not require L3Harris to incur costs associated with delays that were caused by the BAE through no fault of L3Harris.

98. BAE directed or caused L3Harris to continue performance despite L3Harris proper notice to BAE that it was incurring additional costs as a result of the COVID-19 pandemic and additional work, rework, and delays caused by BAE.

99. The additional work, rework, and delays constructively changed the Vicksburg Subcontract.

100. BAE is obligated under the Vicksburg Subcontract's Changes Clause, FAR § 52.243-1, to pay L3Harris for increased costs resulting from changes to the Vicksburg Subcontract directed or caused by BAE, including constructive changes or acceleration of the schedule.

101. L3Harris timely notified BAE of the changes and requested the additional compensation owed through the submission of its REA and the May 25, 2023 CFR.

102. BAE breached the Vicksburg Subcontract by failing to compensate L3Harris for the additional costs incurred associated with its changes.

103. As a direct and proximate result of BAE's breach of the Vicksburg Subcontract, L3Harris has suffered direct pecuniary damages.

104. L3Harris current estimate of the cost impact of BAE's changes to the Vicksburg Subcontract is $5,664,431.98 and damages are continuing to accrue.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, L3Harris respectfully requests judgment in its favor against BAE as follows:

A. For all sums due for compensation of increased work beyond the scope of the Vicksburg Subcontract in an amount to be proven at trial, together with pre-judgment interest from the date of breach to the date of judgment, and post-judgment interest at the judgment rate until paid.

B. For such other and further relief as the Court may deem just and appropriate, including, but not limited to, attorneys' fees and costs.

Respectfully submitted this this 12th day of June, 2023.

>DENTONS US LLP
>
>*/s/ Matthew A. Lafferman*
>Matthew A. Lafferman
>Virginia Bar No. 86187
>
>DENTONS US LLP
>1900 K Street NW
>Washington, DC  20006
>Telephone: 202-496-7303
>matthew.lafferman@dentons.com
>
>Steven M. Masiello
>Joseph G. Martinez
>DENTONS US LLP
>1400 Wewatta Street, Suite 700
>Denver, CO 80202
>Telephone:  303-634-4355
>Facsimile:  303-634-4400
>steve.masiello@dentons.com
>(*Application for Pro Hac Vice Forthcoming*)
>Telephone:  303-634-4371
>Facsimile:  303-634-4400
>joe.martinez@dentons.com
>(*Application for Pro Hac Vice Forthcoming*)
>
>COUNSEL FOR L3HARRIS MARITIME
>SERVICES, INC. f/k/a L-3 UNIDYNE, INC.